UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>Ardent Harmony Fund Inc.,<br><br>           Debtor. | Chapter 15<br><br>Case No.: 16-12282 |

**DECLARATION OF MICHAEL PEARSON IN SUPPORT OF(I) THE VERIFIED PETITION FOR RECOGNITION OF FOREIGN PROCEEDING AND (II) MOTION IN SUPPORT OF VERIFIED PETITION FOR RECOGNITION OF FOREIGN PROCEEDING AND FOREIGN REPRESENTATIVE AND FOR RELATED RELIEF**

I, Michael Pearson, declare as follows:

1. I am an individual over 21 years of age and am competent to testify and to provide this Declaration in support of the *Verified Petition for Recognition of Foreign Proceeding Under Chapter 15* (the "Verified Petition") and the *Motion in Support of the Verified Petition for Recognition of Foreign Proceeding and Foreign Representative and for Related Relief* (the "Motion").

2. Together with Mr. Andrew Childe, I am a Joint Official Liquidator (together, the "JOLs") of Ardent Harmony Fund Inc. ("Ardent") and as such have authority to act on its behalf under Cayman Islands law. I have personal knowledge of the statements set forth in this Declaration or such statements are based upon my review of the books and records of Ardent, which books and records were kept in the regular course of Ardent's business and relied upon by Ardent's employees and/or agents in conducting Ardent's business. Those books and records also included data compiled in the ordinary course of Ardent's business.

3. Mr. Childe and I founded Fund Solution Service Limited ("FSSL"), a Cayman Islands-based company, which specializes in providing independent governance to a limited number of select investment vehicles.

4. Mr. Childe and I both reside in the Cayman Islands.

5. Mr. Childe and I maintain offices at 2nd Floor Harbour Centre, 42 North Church Street, George Town, Grand Cayman, Cayman Islands.

6. I have over 15 years' experience in the financial services sector and, until 2012, I was a Director at a Big Four accounting firm in the Cayman Islands where I led the investment fund restructuring and liquidation team.

7. I serve as a Cayman Court-appointed liquidator and as a restructuring advisor to a number of high-profile offshore and onshore investment funds. I am a member of INSOL International and the American Bankruptcy Institute, and I am the founding chairman of the 200-member, INSOL-affiliated, Cayman Islands-based Restructuring and Insolvency Specialists Association.

8. I earned a bachelor's of science degree in business administration from the University of Bath, and I am a fellow of the Institute of Chartered Accountants in England & Wales.

A.   **Ardent Generally**

9. Ardent is registered as a "mutual fund" under Section 4(1)(b) of the Mutual Funds Law (Revised) of the Cayman Islands. Berkeley Hanover, Inc. ("BHI"), an entity wholly-owned by Berkeley Hanover, Limited ("BHL"), is Ardent's investment manager and its sole voting shareholder. BHI is incorporated in the Cayman Islands.

10. Ardent's strategy was to invest with credit advisors who manage accounts receivables financing transactions. These transactions, which are commonly referred to as factoring transactions, involve the sale of accounts receivable to a third party, usually at a discount.

11.     Ardent is now in liquidation, and its headquarters are presently located at my firm's offices (FSSL, 2nd Floor Harbour Center, 42 North Church Street, George Town, Grand Cayman, Cayman Islands).

### B.     Dissipation of Ardent's Assets By Third Parties

12.     On or around February 25, 2013, Ardent entered into an agreement (the "Credit Advisor Agreement") with Bruin Funding LLC ("Bruin"), a special purpose vehicle created by RMP Capital Corp. Inc. ("RMP Capital"), pursuant to which Bruin agreed to provide its services as a credit advisor to Ardent. Bruin's duties included, *inter alia*, credit administration, credit facilitation, receivables management and other services for the benefit of Ardent.

13.     In conjunction with the Credit Advisor Agreement, on or around February 25, 2013, Ardent and Bruin entered into a series of agreements that created a loan facility in the total amount of $20.25 million (the "Loan Facility").

14.     As part of Bruin's duties as credit advisor to Ardent, Bruin was obligated to provide Ardent with periodic reports on the status of its investments.

15.     In what appeared to be a manner consistent with its duties under the Credit Advisor Agreement, Bruin provided Ardent with monthly Collateral Reports (the "Collateral Reports"). These Collateral Reports provided, among other things, a list of Bruin's customers and a valuation of Bruin's loan portfolio.

16.     The Collateral Reports showed that Bruin's portfolio had a fairly-consistent valuation within a range that Ardent might expect.

17.     On January 1, 2016, Blackstar Capital Group ("Blackstar") acquired a majority ownership stake in BHL.

18. Immediately thereafter, Blackstar commenced a comprehensive review of Ardent's investment portfolio, which consists entirely of its Loan Facility with Bruin. Blackstar also requested that Ardent's auditor, BDO ("BDO"), expedite its annual audit of Ardent.

19. During the course of Blackstar's review, Blackstar and Ardent became concerned that Bruin and RMP Capital were unable or unwilling to provide basic information that would permit BDO to perform its annual audit or even validate Bruin and RMP Capital's representations concerning the valuation of Bruin's loan portfolio.

20. On April 8, 2016, after months of demands by BHI on behalf of Ardent, Bruin shared with BHI a less than two-page document regarding the status of the Loan Facility (the "Loan Narrative"). The Loan Narrative, however, was materially different from the Collateral Reports with which Bruin and RMP Capital provided Ardent in the prior three years. Upon review of this document, it became clear that there were significant impairments to Bruin's loan book.

21. First, the Loan Narrative indicated that many of Bruin's contracts with its clients "had ended" or that the relationship was "inactive," which I understand to mean that the underlying loans were repaid. However, none of the loan repayments on the purportedly repaid loans flowed to Ardent, and RMP Capital and Bruin have not provided information regarding the disposition of such funds. Second, the Loan Narrative also showed that several of the loans Bruin had previously represented that it made, were, in fact, never made at all.

22. In total, it now appears that Ardent's investments plummeted from their prior valuation of approximately $26 million down to approximately $3.8 million or less.

C.  **The JOLs' Appointment**

23. For the reasons set forth above, on April 26, 2016, by written resolution of BHI as the sole voting shareholder of Ardent (the "Special Resolution"), Ardent was placed into voluntary liquidation pursuant to section 116(c) of The Companies Law (2013 Revision) (the "Companies

Law"). Pursuant to the Special Resolution, Mr. Childe, also of FSSL, and I were appointed voluntary liquidators for the purpose of winding up Ardent.

24. On April 28, 2016, the JOLs filed a petition for the winding up of Ardent in the Grand Court of the Cayman Islands (the "Cayman Court"), Financial Services Division.

25. By an Order dated May 10, 2016, the Cayman Court in Cause No. FSD 54 of 2016 (the "Cayman Proceeding") ordered, *inter alia*, that (i) the liquidation of Ardent shall continue under the supervision of the Cayman Court, (ii) the JOLs are appointed and authorized, jointly and severally, to act on behalf of Ardent, (iii) the JOLs shall have all of the powers set out in Part 1 of the Third Schedule to the Companies Law and may exercise such powers without further sanction of the Cayman Court (the "JOLs' Powers"), and (iv) the JOLs are entitled to receive remuneration for their services (the "Supervision Order"). A true and correct copy of the Supervision Order is submitted with the *Evidence of the Foreign Proceeding and Statements and Lists Required by Section 1515 of the Bankruptcy Code and Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure*.

26. Pursuant to the Supervision Order and the Companies Law, without further sanction or Order of the Cayman Court, the JOLs' Powers include, among others, the power to:

   a. Bring or defend any action or other legal proceeding in the name and on behalf of Ardent;

   b. Take possession of, collect and get in the property of the company, and for that purpose to take all such proceedings as he considers necessary;

   c. To do all acts and execute in the name and on behalf of the company all deeds, receipts and other documents and for that purpose to use the company seal;

   d. To prove, rank and claim in the bankruptcy, insolvency or sequestration of any contributory for any balance against his estate and to receive dividends in the bankruptcy, insolvency or sequestration in respect of that balance as a separate debt due from the bankrupt or insolvent and rateably with other creditors;

 e. To draw, accept, make and indorse any bill of exchange or promissory note in the name and on behalf of the company as if made by the company in the course of its business;

 f. To promote a scheme of arrangement;

 g. Convene a meeting of creditors and contributories; and

 h. To do all other things incidental to the exercise of his powers.

**D. The New York State Court Litigation**

27. On April 29, 2016, Ardent, by and through its JOLs, commenced an action against RMP Capital and Bruin by filing a summons and complaint in the Supreme Court of the State of New York, Nassau County, captioned *Ardent Harmony Fund Inc. v. RMP Capital Corp., Inc., et al.*; Index No. 603046/2016 (the "State Court Litigation"). In the State Court Litigation, Ardent seeks an equitable accounting, imposition of a constructive trust and appointment of a temporary receiver and asserts claims against RMP Capital and Bruin for fraud, breach of contract, conversion, breach of fiduciary duty, and injunctive relief.

**E. Notice to Ardent's Creditors**

28. As required by Cayman law, on May 9, 2016, the JOLs caused notice of (i) Ardent's voluntary liquidation, (ii) the JOLs appointment as Joint Official Liquidators of Ardent, and (iii) the deadline for creditors of Ardent to prove their debts or claims (*i.e.*, May 31, 2016) to be published in the Cayman Islands Gazette. *See* Declaration of Rachael Reynolds in support of the Verified Petition and Motion, Exhibit A.

**F. The Chapter 15 Case**

29. By Order of the Cayman Court entered on July 8, 2016, (the "July 8 Order"), the JOLs were granted leave to file (i) a petition for recognition of the Cayman liquidation proceeding and for recognition of the JOLs as Ardent's foreign representatives under Chapter 15 (the "Chapter 15 Case") of title 11 of the United States Code (the "Bankruptcy Code") and, (ii) upon recognition

of the Chapter 15 Case as a foreign main proceeding, a petition in this Court under Chapter 11 of the Bankruptcy Code.

30. A true and correct copy of the July 8 Order is submitted with the *Evidence of the Foreign Proceeding and Statements and Lists Required by Section 1515 of the Bankruptcy Code and Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure.*

31. By filing the Verified Petition and the Motion, the JOLs seek the assistance of the U.S. courts in their efforts to locate and recover Ardent's assets in furtherance of their duties as Joint Official Liquidators of Ardent to liquidate Ardent's assets and repay its creditors according to their priorities. I anticipate that calling for claims and subsequently admitting them to rank for dividend will take place in the Cayman Islands as part of the Cayman Proceeding.

**G.    The Retainer**

32. Prior to filing the Verified Petition, I caused a retainer in the amount of fifty thousand dollars (U.S.) ($50,000) to be wire transferred to an account in the name of Reed Smith LLP in New York, New York. After deduction for its fees and expenses, Reed Smith LLP holds such funds as a security retainer.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: August 5, 2016          By: _____
                                         Michael Pearson, as Joint Official
                                         Liquidator of Ardent Harmony Fund Inc.