REED SMITH LLP
James C. McCarroll
Kurt F. Gwynne (*pro hac vice* pending)
Gil Feder
Casey D. Laffey
599 Lexington Avenue
New York, NY  10022-7650
Telephone:  (212) 521-5400
Facsimile:  (212) 521-5450
Email: jmccarroll@reedsmith.com
      kgwynne@reedsmith.com
      gfeder@reedsmith.com
      claffey@reedsmith.com

*Counsel for the Petitioner, Michael Pearson,*
*in his capacity as Joint Official Liquidator and Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| Ardent Harmony Fund Inc., | Case No.:  16-12282 |
| Debtor. | |

**MOTION IN SUPPORT OF VERIFIED PETITION FOR**
**RECOGNITION OF FOREIGN PROCEEDING AND**
**FOREIGN REPRESENTATIVE AND FOR RELATED RELIEF**

      Michael Pearson, in his capacity as Joint Official Liquidator and duly-authorized foreign

representative (the "Petitioner" or "JOL") of Ardent Harmony Fund Inc. ("Ardent") in respect of

an official liquidation proceeding, Cause No. FSD 54 of 2016 (the "Cayman Proceeding"),

pending before the Grand Court of the Cayman Islands (the "Cayman Court"), Financial Services

Division, pursuant to Part V of The Companies Law (2013 Revision) (the "Companies Law"), by

and through his United States counsel, Reed Smith LLP, respectfully submits this Motion in

Support of Verified Petition for Recognition of Foreign Proceeding and Foreign Representative

and for Related Relief (the "Motion", and together with the Verified Petition for Recognition of

the Foreign Proceeding,[1] the "Verified Petition") seeking, among other things, entry of the proposed order attached as Exhibit A (the "Proposed Order") (i) recognizing the Cayman Proceeding as a "foreign main proceeding" under sections 1502(4), 1515, and 1517 of title 11 of the United States Code (the "Bankruptcy Code"); (ii) recognizing the Petitioner as Ardent's "foreign representative" as defined in section 101(24) of the Bankruptcy Code; and (iii) granting such other relief as is appropriate.

In support of the Verified Petition, the Petitioner relies on (i) the *Declaration of Michael Pearson in Support of the Verified Petition* (the "Pearson Declaration") and (ii) the *Declaration of Rachael Reynolds in Support of the Verified Petition* (the "Reynolds Declaration") filed concurrently herewith and incorporated as if fully set forth herein.[2]  In addition, the Petitioner respectfully represents as follows.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider the Verified Petition pursuant to sections 157 and 1334 of title 28 of the United States Code and the Amended Standing Order of Reference, dated January 31, 2012, 12 Misc. 00032 (S.D.N.Y. Feb. 1, 2012) (Preska, C.J.).

2.      This is a core proceeding pursuant to section 157(b)(2) of title 28 of the United States Code.  *See* 28 U.S.C. § 157(b)(2)(P) ("Core proceedings include, but are not limited to . . . recognition of foreign proceedings and other matters under chapter 15 of title 11").

---

[1] The Verified Petition for Recognition of Foreign Proceeding includes the following attachments:  *Evidence of the Foreign Proceeding and Statements and Lists Required by Section 1515 of the Bankruptcy Code and Rule 1007(A)(4) of the Federal Rules of Bankruptcy Procedure* and the *Corporate Ownership Statement as Required by Federal Rules of Bankruptcy Procedure 1007(a)(4) and 7007.1 and Local Bankruptcy Rule 1007-3*.

[2] A significant portion of the Reynolds Declaration is devoted to Cayman Islands law.  Ardent seeks to admit the Reynolds Declaration into the record pursuant to Federal Rule of Civil Procedure 44.1, as made applicable by Federal Rule of Bankruptcy Procedure 9017.  *See* Fed.R.Civ.P. 44.1 ("In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence.").

3.      Venue is proper in this Court pursuant to section 1410(1) of title 28 of the United

States Code, which provides that "[a] case under chapter 15 of title 11 may be commenced in the

district court of the United States for the district . . . in which the debtor has its principal place of

business or principal assets in the United States."  28 U.S.C. § 1410(1).  As discussed further

below, Ardent's principal assets in the United States are located within the Southern District of

New York.

## FACTUAL BACKGROUND

4.      Contemporaneously with the filing of this Motion, the Petitioner filed the Verified

Petition for relief under Chapter 15 of the Bankruptcy Code.

### A.    Ardent Harmony Fund Inc.

5.      Ardent is registered as a "mutual fund" under Section 4(1)(b) of the Mutual Funds

Law (Revised) of the Cayman Islands.  Berkeley Hanover, Inc. ("BHI"), an entity wholly-owned

by Berkeley Hanover, Limited ("BHL"), is Ardent's investment manager.  *See* Pearson

Declaration at ¶ 9.

6.      Ardent's strategy was to invest with credit advisors who manage accounts

receivables financing transactions.   These transactions, which are commonly referred to as

factoring transactions, involve the sale of accounts receivable to a third-party, usually at a

discount. *See* Pearson Declaration at ¶ 10.

7.      Ardent is now in liquidation and its headquarters are presently located at the

offices of the JOL (2nd Floor Harbour Center, 42 North Church Street, George Town, Grand

Cayman, Cayman Islands).  *See* Pearson Declaration at ¶ 11.

### B.    Dissipation of Ardent's Assets By Third Parties

8.      On or around February 25, 2013, Ardent entered into an agreement (the "Credit

Advisor Agreement") with Bruin Funding LLC ("Bruin"), a special purpose vehicle created by

RMP Capital Corp. Inc. ("RMP Capital"), pursuant to which Bruin agreed to provide its services as a credit advisor to Ardent. Bruin's duties included, *inter alia*, credit administration, credit facilitation, receivables management and other services for the benefit of Ardent. *See* Pearson Declaration at ¶ 12.

9.      In conjunction with the Credit Advisor Agreement, on or around February 25, 2013, Ardent and Bruin entered into a series of agreements that created a loan facility in the total amount of $20.25 million (the "Loan Facility"). *See* Pearson Declaration at 13.

10.     As part of Bruin's duties as credit advisor to Ardent, Bruin was obligated to provide Ardent with periodic reports on the status of its investments. *See* Pearson Declaration at ¶ 14.

11.     In what appeared to be a manner consistent with its duties under the Credit Advisor Agreement, Bruin provided Ardent with monthly Collateral Reports (the "Collateral Reports"). These Collateral Reports provided, among other things, a list of Bruin's customers and a valuation of Bruin's loan portfolio. *See* Pearson Declaration at ¶ 15.

12.     The Collateral Reports showed that Bruin's portfolio had a fairly-consistent valuation within a range that Ardent might expect. *See* Pearson Declaration at ¶ 16.

13.     On January 1, 2016, Blackstar Capital Group ("Blackstar") acquired a majority ownership stake in BHL. *See* Pearson Declaration at ¶ 17.

14.     Immediately thereafter, Blackstar commenced a comprehensive review of Ardent's investment portfolio, which consists entirely of its Loan Facility with Bruin. Blackstar also requested that Ardent's auditor, BDO ("BDO"), expedite its annual audit of Ardent. *See* Pearson Declaration at ¶ 18.

15.     During the course of Blackstar's review, Blackstar and Ardent became concerned that Bruin and RMP Capital were unable or unwilling to provide basic information that would permit BDO to perform its annual audit or even validate Bruin and RMP Capital's representations concerning the valuation of Bruin's loan portfolio. *See* Pearson Declaration at ¶ 19.

16.     On April 8, 2016, after months of demands by BHI on behalf of Ardent, Bruin shared with BHI a less than two-page document regarding the status of the Loan Facility (the "Loan Narrative"). The Loan Narrative, however, was materially different from the Collateral Reports with which Bruin and RMP Capital provided Ardent in the prior three years. Upon review of this document, it became clear that there were significant impairments to Bruin's loan book. *See* Pearson Declaration at ¶ 20.

17.     First, the Loan Narrative indicated that many of Bruin's contracts with its clients "had ended" or that the relationship was "inactive," which the JOL understands to mean that the underlying loans were repaid. However, none of the loan repayments on the purportedly repaid loans flowed to Ardent, and RMP Capital and Bruin have not provided information regarding the disposition of such funds. Second, the Loan Narrative also showed that several of the loans Bruin had previously represented that it made, were, in fact, never made at all. *See* Pearson Declaration at ¶ 21.

18.     In total, it now appears that Ardent's investments plummeted from their prior valuation of approximately $26 million down to approximately $3.8 million. *See* Pearson Declaration at ¶ 22.

## C.     The Appointment and Powers of the JOLs

19.     For the reasons set forth above, on April 26, 2016, by written resolution of BHI as the sole voting shareholder of Ardent (the "Special Resolution"), Ardent was placed into

voluntary liquidation pursuant to section 116(c) of The Companies Law. *See* Pearson Declaration at ¶ 23.

20.    Pursuant to the Special Resolution, Messrs. Pearson and Andrew Childe (together, the "JOLs") were appointed voluntary liquidators for the purpose of winding up Ardent. *See* Pearson Declaration at ¶ 23.

21.    On April 28, 2016, the JOLs presented a petition in the Cayman Court to place the winding up of Ardent under the supervision of the Cayman Court. *See* Reynolds Declaration ¶ 11.

22.    By an Order dated May 10, 2016, the Cayman Court in the Cayman Proceeding ordered, *inter alia*, that (i) the liquidation of Ardent shall continue under the supervision of the Cayman Court, (ii) the JOLs are appointed and authorized to act jointly and severally on behalf of Ardent, (iii) the JOLs shall have all of the powers set out in Part 1 of the Third Schedule to the Companies Law and may exercise such powers without further sanction of the Cayman Court (the "JOLs' Powers"), and (iv) the JOLs are entitled to receive remuneration for their services (the "Supervision Order"). *See* Pearson Declaration at ¶ 25.

23.    A true and correct, Cayman Court stamped copy of the Supervision Order is submitted with the *Evidence of the Foreign Proceeding and Statements and Lists Required by Section 1515 of the Bankruptcy Code and Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure*. *See* Pearson Declaration at ¶ 25.

24.    Subject to the ultimate control of the Cayman Court, the JOLs are the sole persons authorized (jointly and severally) to act on behalf of Ardent. *See* Reynolds Declaration ¶ 14.

25.    Accordingly, pursuant to the Supervision Order and the Companies Law, without further sanction or Order of the Cayman Court, the JOLs' Powers include, among others, the power to:

(a) bring or defend any action or other legal proceeding in the name and on behalf of Ardent;

(b) make any compromise or arrangement with creditors or persons claiming to be creditors or having or alleging themselves to have any claim (present or future, certain or contingent, ascertained or sounding only in damages) against Ardent or for which the company may be rendered liable;

(c) compromise on such terms as may be agreed all debts and liabilities capable of resulting in debts, and all claims (present or future, certain or contingent, ascertained or sounding only in damages) subsisting, or supposed to subsist between Ardent and a contributory or alleged contributory or other debtor or person apprehending liability to Ardent;

(d) deal with all questions in any way relating to or affecting the assets or the winding up of Ardent, to take any security for the discharge of any such call, debt, liability or claim and to give a complete discharge in respect of it;

(e) sell any of Ardent's property by public auction or private contract with power to transfer the whole of it to any person or to sell the same in parcels;

(f) raise or borrow money and grant securities therefor over Ardent's property;

(g) engage staff (whether or not as employees of the company) to assist in the performance of the JOLs' functions;

(h) engage attorneys and other professionally qualified persons to assist in the performance of the JOLs' functions;

(i) take possession of, collect and get in the property of Ardent and for that purpose to take all such proceedings as he considers necessary;

(j) promote a scheme of arrangement pursuant to section 86 of the Companies Law;

(k) convene meetings of creditors and contributories; and

(l) do all other things incidental to the exercise of the JOLs' powers.

*See* Pearson Declaration at ¶ 26.

26.     In addition, the Cayman Court specifically authorized Ardent to file a Chapter 15 petition in this Court.  *See* Cayman Court Order dated July 8, 2016 (the "July 8 Order") at ¶ 1(a); *see also* Pearson Declaration at ¶¶ 29-30.

27.     A true and correct copy of the July 8 Order is submitted with the *Evidence of the Foreign Proceeding and Statements and Lists Required by Section 1515 of the Bankruptcy Code and Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure* (which is attached to the Chapter 15 Petition).  *See* Pearson Declaration at ¶ 30.

28.     Therefore, the JOLs have the authority to liquidate Ardent's assets.  *See* Reynolds Declaration at ¶¶ 29 and 32.

29.     The Cayman Court supervises, and has ultimate control of, the liquidation of Ardent's assets.  *See* Reynolds Declaration at ¶ 28.

30.     The JOLs will be responsible for administering claims in a liquidation of Ardent. *See* Companies Law at § 140; Reynolds Declaration at ¶¶ 18, 31 and Exhibit A thereto; Companies Winding Up Rules (2008), Order 16, entitled "Proof of Debts in Official Liquidation."

**D.     Notice to Ardent's Creditors**

31.     In compliance with Section 123 of the Companies Law, (a) on April 26, 2016, the JOLs filed notice of the winding up of Ardent with the Registrar of Companies (the "Registrar"); (b) on April 26, 2016, the JOLs filed with the Registrar their consent to act; and (c) on April 28, 2016 the JOLs served notice of the winding up upon the Cayman Islands Monetary Authority ("CIMA").  *See* Reynolds Declaration at ¶ 17.

32.     Finally, as prescribed by law, on May 9, 2016, the JOLs caused notice to be published in the Cayman Islands Gazette of (i) Ardent's placement into voluntary liquidation, (ii) the JOLs appointment as Joint Official Liquidators of Ardent, and (iii) the deadline for

creditors of Ardent to prove their debts or claims.  *See* Reynolds Declaration at ¶ 18; Exhibit A thereto.

### RELIEF REQUESTED[3]

33.     The Petitioner respectfully requests that this Court enter an order, substantially in the form of the attached Proposed Order, (i) recognizing the Cayman Proceeding as a "foreign main proceeding" under sections 1502(4), 1515, and 1517 of the Bankruptcy Code; (ii) recognizing the Petitioner as Ardent's "foreign representative" as defined in section 101(24) of the Bankruptcy Code; and (iii) granting such further relief as is appropriate.[4]

### BASES FOR RELIEF

34.     Chapter 15 of the Bankruptcy Code applies where a foreign representative seeks assistance in a U.S. court.  *See* 11 U.S.C. § 1501(b)(1).  The stated objectives of Chapter 15 include: (i) cooperation between U.S. courts and foreign courts in cross-border insolvency cases, (ii) "legal certainty for trade and investment," (iii) protection of all interested parties in a cross-border insolvency, and (iv) "maximization of the value of the debtor's assets."  11 U.S.C. § 1501(a); *see In re Oversight & Control Comm'n of Avánzit, S.A.*, 385 B.R. 525, 534 (Bankr. S.D.N.Y. 2008).  The Petitioner respectfully submits that each of these goals can best be achieved by recognizing that the Cayman Islands are Ardent's center of main interests ("COMI") and thus, that the Cayman Proceeding is a "foreign main proceeding."

---

[3] The Petitioner reserves the right to return to this Court to obtain recognition or enforcement of any orders entered by the Cayman Court or to seek any other relief available to the Petitioner under Chapter 15 of the Bankruptcy Code.

[4] The standards, procedures and limitations applicable to an injunction apply to the relief set forth in section 1521(a)(1), (2), (3), and (6).  *See* 11 U.S.C. § 1521(e).

### A.    Ardent Is Eligible To Be A "Debtor" Under Chapter 15 Of The Bankruptcy Code

35.    Ardent is an entity eligible to be a "debtor" in a Chapter 15 case.  For the purposes of a case under Chapter 15, "debtor" means an entity that is the subject of a "foreign proceeding."  *See* 11 U.S.C. § 1502(1).[5]

36.    The Second Circuit has held that a Chapter 15 debtor must satisfy the eligibility requirements of section 109(a) of the Bankruptcy Code.  *See Drawbridge Special Opportunities Fund LP v. Barnet (In re Barnet)*, 737 F.3d 238, 248-49 (2d Cir. 2013).  Bankruptcy Code section 109(a) provides that "[n]otwithstanding any other provision of this section, only a *person* that resides or has domicile, a place of business, or *property in the United States*, or a municipality, may be a debtor under this title."  11 U.S.C. § 109(a) (emphasis added).

37.    Ardent is a "person," which is defined to include an "individual, partnership, and corporation" (but to exclude a "government unit" except to the extent, *inter alia*, it "acquires an asset" as a "receiver or liquidating agent").  *See* 11 U.S.C. § 101(41)(A)(ii).

38.    Ardent is a "person" because it is a "corporation"[6] and is not a "governmental unit," which is defined, in part, as an "instrumentality" of a "foreign state" or other foreign or domestic government.  *See* 11 U.S.C. § 101(27).

39.    Ardent's deposit of a $50,000 retainer in Reed Smith's New York bank account prior to the filing of the Verified Petition[7] fulfills the "property" requirement in section 109(a).

---

[5] A "foreign proceeding" is a "collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purposes of a reorganization or liquidation." 11 U.S.C. § 101(23).  As discussed further *infra*, the Cayman Proceeding before the Cayman Court is a "foreign proceeding" because it is a collective judicial proceeding relating to Ardent's insolvency in which its assets and affairs are subject to the Cayman Court's control and supervision for purposes of reorganization or liquidation.

[6] A "corporation" includes, *inter alia,* an "association having a power or privilege that a private corporation, but not an individual or partnership, possess."  *See* 11 U.S.C. § 101(9)(a)(1).

*See In re Berau Capital Res. Pte Ltd.*, 540 B.R. 80, 82, 84 (Bankr. S.D.N.Y. 2015) (holding cash in client trust account maintained by the debtor's U.S. counsel and the presence of an indenture clause expressly providing for New York law and New York choice of forum satisfied section 109(a) requirement); *In re Octaviar Admin Pty Ltd.*, 511 B.R. 361, 372-73 (Bankr. S.D.N.Y. 2014) (holding cash in client trust fund maintained by the foreign representatives' U.S. counsel satisfied the section 109(a) requirement); *In re Globo Comunicacoes e Participacoes S.A.*, 317 B.R. 235, 249 (Bankr. S.D.N.Y. 2004) ("For a foreign corporation to qualify as a debtor under section 109, courts have required only nominal amounts of property to be located in the United States, and have noted that there is 'virtually no formal barrier' to having federal courts adjudicate foreign debtors' bankruptcy proceedings."); *In re Paper I Partners, L.P.*, 283 B.R. 661, 674 (Bankr. S.D.N.Y. 2002) ("[Section 109] does not appear to be vague or ambiguous, and it seems to have such a plain meaning as to leave the Court no discretion to consider whether it was the intent of Congress to permit someone to obtain a bankruptcy discharge solely on the basis of having a dollar, a dime or a peppercorn located in the United States") (quoting *In re McTague*, 198 B.R. 428, 432 (Bankr. W.D.N.Y. 1996)).

40.    Moreover, Ardent's causes of action to recover such property also have a situs in the United States (and, some of them, in this District). *See Berau Capital*, 540 B.R. at 82 (noting that "cases have identified bank accounts, attorney retainers deposited in New York, or causes of action owned by the foreign debtor with a situs in New York, as satisfying the 'property in the United States' eligibility requirement"); *Octaviar*, 511 B.R. at 372 (causes of action against defendants located in the U.S. involving allegations that certain funds were wrongfully transferred to such defendants constituted "property" in the U.S.).

---

[7] *See* Pearson Declaration at ¶ 32.

41.    Therefore, Ardent is a "person" with "property" in the U.S. as required by section 109(a) of the Bankruptcy Code.

42.    Section 1501(c)(1) of the Bankruptcy Code provides that Chapter 15 is not available to "an entity, other than a foreign insurance company, identified by exclusions in section 109(b)." *See* 11 U.S.C. § 1501(c)(1). Ardent does not fall within any of the categories of entities excluded from Chapter 15 eligibility under section 109(b).

43.    Therefore, Ardent is eligible for relief as a "debtor" under Chapter 15 of the Bankruptcy Code.

**B.    Recognition of the Cayman Proceeding as a "Foreign Main Proceeding" and of the Petitioner as Ardent's "Foreign Representative" Is Appropriate.**

44.    Section 1517 of the Bankruptcy Code provides that, after notice and hearing, the Court shall enter an order recognizing a foreign proceeding as a foreign main (or nonmain) proceeding if (i) such foreign proceeding is a foreign main (or nonmain) proceeding within the meaning of section 1502 of the Bankruptcy Code, (ii) the foreign representative applying for recognition is a person or body, and (iii) the petition meets the requirements of section 1515 of the Bankruptcy Code. *See* 11 U.S.C. § 1517(a); *see also In re Overnight & Control Comm'n of Avanzit, S.A.*, 385 B.R. 525, 532 (Bankr. S.D.N.Y. 2008). As explained below, the Cayman Proceeding, the Petitioner, and his Verified Petition satisfy all of the foregoing requirements.

**1.    The Cayman Proceeding Is a "Foreign Proceeding"**

45.    The Cayman Proceeding is a "foreign main proceeding" and, as such, satisfies the first condition for entry of an order recognizing such proceeding under section 1517(a) of the Bankruptcy Code. As an initial matter, the Cayman Proceeding falls within the general definition of "foreign proceeding" set forth in section 101(23) of the Bankruptcy Code, which states as follows:

> The term "foreign proceeding" means a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23).

46.    Section 101(23) of the Bankruptcy Code requires that a "foreign proceeding" (i) be a collective judicial or administrative proceeding relating to insolvency or adjustment of debt, (ii) pending in a foreign country, (iii) under the supervision of a foreign court, and (iv) for the purpose of reorganizing or liquidating the assets and affairs of the debtor. *See id*.

47.    The Cayman Proceeding is a "collective" judicial proceeding because it was commenced by the JOLs for the benefit of Ardent and all of its investors, creditors, and contributories. *See In re Betcorp Ltd.*, 400 B.R. 266, 281 (Bankr. D. Nev. 2009) (a proceeding is collective where such proceeding "considers the rights and obligations of all creditors" in contrast to a non-collective proceeding, such as a "receivership remedy instigated at the request, and for the benefit, of a single secured creditor").

48.    The Cayman Proceeding was commenced pursuant to Part V of the Companies Law, which is the legislation governing liquidation, insolvency and the adjustment of debts.  An official liquidation is a court-supervised process that is commonly used to wind up Cayman Islands companies and in which the rights of creditors and contributories (i.e. shareholders) vis-a-vis the debtor are determined together. *See* Reynolds Declaration at ¶¶ 24-25.

49.    Moreover, the Cayman Proceeding relates to insolvency or adjustment of debt because the JOLs have the power and obligation to liquidate Ardent's assets for the benefit of its creditors and contributories under the Companies Law.  *See* Supervision Order; Pearson Declaration at ¶¶ 25-26; Reynolds Declaration at ¶¶ 29 and 32.

50.    A "foreign court" is defined as "a judicial or other authority competent to control or supervise a foreign proceeding." *See* 11 U.S.C. § 1502(3). The Cayman Court is a judicial body of the Cayman Islands, which has jurisdiction over the JOLs and the liquidation of Ardent's assets. Thus, the Cayman Court is a "foreign court" with a supervisory role in the Cayman Proceeding.

51.    The Cayman Proceeding is pending in a "foreign country" as it is not a U.S. proceeding.

52.    Based on the foregoing, the Cayman Proceeding constitutes a "foreign proceeding" as defined in section 101(23), and as referred to in section 1517, of the Bankruptcy Code.

### 2.    The Cayman Proceeding Is a "Foreign Main Proceeding"

53.    The Cayman Proceeding is a "foreign main proceeding" as defined by section 1502(4). A "foreign main proceeding" is "a foreign proceeding pending in a country where the debtor has the center of its main interests[.]" *See* 11 U.S.C. § 1502(4) (frequently abbreviated as "COMI"); *see also* 11 U.S.C. § 1517(b)(1) (providing that an order of recognition as a foreign main proceeding shall be entered if the foreign proceeding "is pending in the country where the debtor has the center of its main interests").

54.    The Bankruptcy Code does not define COMI, though "in the absence of evidence to the contrary, the debtor's registered office . . . is presumed to be the center of the debtor's main interests." 11 U.S.C. § 1516(c). The section 1516(c) presumption "permits and encourages fast action in cases where speed may be essential." *See In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 128 (Bankr. S.D.N.Y. 2007) *aff'd*, 389 B.R. 325 (S.D.N.Y. 2008).

55.      Here, Ardent was a registered "mutual fund" in the Cayman Islands, Registration No. 246187.  *See* Reynolds Declaration at ¶ 38.  Thus, pursuant to the presumption of section 1516(c), Ardent's COMI is in the Cayman Islands.

56.      Where further inquiry beyond section 1516's presumption is required, bankruptcy courts determine a debtor's COMI "based on its activities at or around the time the Chapter 15 is filed."  *Morning Mist Holdings Ltd v. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d 127, 137 (2d Cir. 2013).  The Bankruptcy Court for the Southern District of New York has identified certain factors that may be probative of the determination of a debtor's COMI (the "COMI Factors"):

> the location of the debtor's headquarters; the location of those who actually manage the debtor (which, conceivably could be the headquarters of a holding company); the location of the debtor's primary assets; the location of the majority of the debtor's creditors or of a majority of the creditors who would be affected by the case; and/or the jurisdiction whose law would apply to most disputes.

*In re SPhinX, Ltd.,* 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006), *affd*, 371 B.R. 10 (S.D.N.Y. 2007).  The Second Circuit has acknowledged the COMI Factors are a nonexclusive list that "is a helpful guide, but consideration of these specific factors is neither required nor dispositive" and has warned against mechanical application.  *See Fairfield Sentry,* 714 F.3d at 137.  The Second Circuit has underscored the importance of criteria that are both objective and ascertainable to third parties to determine a debtor's COMI.  *Id.* at 136-37.  Whether a third party could objectively ascertain a debtor's COMI may be determined "by examining factors 'in the public domain.'"  *Id.* at 137.

57.      In assessing these "factors in the public domain," a court will look at "activities at or around the time the Chapter 15 petition is filed[.]"  *Id.*

58.      A "court may consider the location of the debtor's 'nerve center,' including from where the debtor's activities are directed and controlled, in determining a debtor's COMI."  *In re*

- 15 -

*Suntech Power Holdings Co., Ltd.*, 520 B.R. 399, 416 (Bankr. S.D.N.Y. 2014) (citation and quotations omitted).  Ardent is in liquidation and its headquarters are presently located at the JOLs' offices at 2nd Floor Harbour Center, 42 North Church Street, George Town, Grand Cayman, Cayman Islands.  *See* Pearson Declaration at ¶ 11.

59.    A company incorporated under the Companies Law may be established as an "exempted" company or as an "ordinary" company.  Both types of company are required to make certain annual statutory filings with the Registrar.  However, an exempted company differs in that it is prohibited from undertaking business in the Cayman Islands except in furtherance of its business carried on outside the Cayman Islands.[8]  Specifically it may effect and conclude contracts in the Cayman Islands and exercise in the Cayman Islands all of its powers necessary for the carrying on of its business outside the Cayman Islands (so it may employ staff or agents in the Cayman Islands or have offices in the Cayman Islands in furtherance of its business outside the Cayman Islands once it has obtained any appropriate trade licenses).  *See* Reynolds Declaration at ¶ 39.

60.    Although upon its incorporation Ardent was restricted from carrying on business within the Cayman Islands, this did not mean that Ardent lacked a presence in the Cayman Islands.  For example, prior to the commencement of the voluntary liquidation, Ardent was located at Elian, 89 Nexus Way, Camana Bay, Grand Cayman KY1-9007.  *See* Reynolds Declaration at ¶ 40.

61.    BHI, the sole voting shareholder of Ardent, is incorporated in the Cayman Islands.  *See* Reynolds Declaration at ¶¶ 8, 41; Pearson Declaration at ¶ 9.  Under Cayman law,

---

[8] Requirements are such that the operation of the proposed company must be "conducted mainly outside the [Cayman] Islands".  *See* Companies Law at §§ 163 and 165.  Exempted companies are also required to file an annual return with the Registrar to this effect, along with its annual fees, pursuant to section 168(b) of the Companies Law.  *See* Companies Law at § 168.

situs of the shares of a Cayman Islands company is the place of its incorporation, *i.e.*, the Cayman Islands. *See 160088 Canada Incorporated v. Socoa International Limited* [1998] CILR 256. *See* Reynolds Declaration at ¶ 41.

62.    In addition, Ardent was regulated by CIMA from the Cayman Islands. *See* Reynolds Declaration at ¶ 42.

63.    The restriction on the carrying on of an exempted company's business inside the Cayman Islands also does not apply after a company commences liquidation in the Cayman Islands.

64.    Once Ardent was placed into voluntary liquidation, its registered office was transferred to the JOLs' offices at 2nd Floor Harbour Centre, 42 North Church Street, George Town, Grand Cayman, Cayman Islands, for the purpose of the liquidation. *See* Reynolds Declaration at ¶ 43.

65.    Moreover, Cayman Islands law requires that at least one official liquidator be resident in the Cayman Islands, and here, both JOLs reside in the Cayman Islands. *See* Reynolds Declaration at ¶ 44; Pearson Declaration ¶ 4.

66.    Under the Supervision Order appointing them, the JOLs were granted extensive powers as outlined above. However, the JOLs must obtain approval of the Cayman Court for undertaking certain actions, such as the filing of the Verified Petition. The Ardent liquidation is under the control and supervision of the Cayman Court. *See* Reynolds Declaration at ¶ 45.

67.    In practice, this means that not only is the management of Ardent being conducted by the Liquidators from within the Cayman Islands, but that key aspects of the liquidation are subject to the supervision of the Cayman Court.

68.     Accordingly, pursuant to sections 1502(4) and 1517(b)(1) of the Bankruptcy Code, the Cayman Proceeding should be recognized as a "foreign main proceeding."

### 3.     The Petitioner Is a Qualifying Foreign Representative

69.     The second requirement for recognition of a foreign proceeding under section 1517(a) of the Bankruptcy Code is that the putative foreign representative applying for recognition must be a "person or body."   *See* 11 U.S.C. § 1517(a)(2).   The term "foreign representative" is defined in as:

> a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.

11 U.S.C. § 101(24).   "Person" is defined in section 101(41) to include "individuals."   *See* 11 U.S.C. § 101(41).

70.     Here, the Petitioner is an individual, who has been duly appointed by the Cayman Court to act as the JOL of Ardent with the power to liquidate the assets of Ardent.   *See* Supervision Order at ¶¶ 1, 2 and 4; July 8 Order; Reynolds Declaration at ¶¶ 29, 32; Pearson Declaration at ¶¶ 25, 30.

71.     Accordingly, the Petitioner satisfies sections 101(24) and 1517(a)(2) of the Bankruptcy Code.

### 4.     The Chapter 15 Petition Meets the Requirements of Section 1515

72.     The third and final requirement for recognition of a foreign proceeding under section 1517(a) of the Bankruptcy Code is that the petition for recognition meets the procedural requirements of section 1515 of the Bankruptcy Code.   *See* 11 U.S.C. § 1517(a)(3).

73.     Section 1515 requires that:  (i) the foreign representative must file a petition for recognition, *see* 11 U.S.C. § 1515(a); (ii) the petition for recognition must be accompanied by

either (a) "a certified copy of the decision commencing [the] foreign proceeding and appointing the foreign representative," (b) "a certificate from the foreign court affirming the existence of [the] foreign proceeding and of the appointment of the foreign representative," *or* (c) if such evidence is unavailable, "any other evidence acceptable to the Court" demonstrating the existence of the foreign proceeding and "appointment of the foreign representative," *see* 11 U.S.C. § 1515(b)(1)-(3); and (iii) a statement must be filed "identifying all foreign proceedings with respect to the debtor that are known to the foreign representative," *see* 11 U.S.C. § 1515(c).

74.    Here, this Chapter 15 case has been commenced by the Petitioner—a foreign representative—by the filing of a Verified Petition.  11 U.S.C. § 1515(a).  The Verified Petition is accompanied by court-stamped copies of the Supervision Order and the July 8 Order, which demonstrate the commencement of the Cayman Proceeding and the appointment of the Petitioner as one of Ardent's JOLs with the power to liquidate Ardent's assets for the benefit of its creditors and contributories.  *See* 11 U.S.C. § 1515(b)(2).  Further, the Petitioner submits that the Supervision Order and the July 8 Order constitute "other evidence" of the Cayman Proceeding and the appointment of the Petitioner as Ardent's JOL.  *See* 11 U.S.C. § 1515(b)(3).  Finally, the Petitioner has identified the Cayman Proceeding as the only "foreign proceeding" with respect to Ardent.  *See* 11 U.S.C. § 1515(c).

75.    As set forth above, each of the prerequisites to recognition under section 1517 has been met.  Accordingly, the Petitioner respectfully requests that the Court recognize (i) the Cayman Proceeding as a foreign main proceeding, and (ii) the Petitioner as Ardent's foreign representative.

### C.      The Petitioner Is Entitled to Relief Under Section 1520

76.      Upon recognition of the Cayman Proceeding as a foreign main proceeding, section 1520 of the Bankruptcy Code prescribes certain forms of relief available to the Petitioner, and respecting Ardent's property within the territorial jurisdiction of the U.S.  Such relief is granted automatically as a consequence of recognition, and section 1520 requires no further showing by the Petitioner to obtain such relief.

77.      For example, upon the recognition of a foreign proceeding as a "foreign main proceeding," a foreign representative is automatically entitled to the benefit of the relief conferred under section 1520(a) of the Bankruptcy Code, including, without limitation, the automatic stay imposed pursuant to section 362 of the Bankruptcy Code.  *See* 11 U.S.C. § 1520(a)(1) ("Upon the recognition of a foreign proceeding that is a foreign main proceeding, (1) sections 361 and 362 apply with respect to the debtor and the property of the debtor that is within the territorial jurisdiction of the United States").

78.      Consequently, upon the recognition by this Court of the Cayman Proceeding as a "foreign main proceeding," the ancillary recognition of the automatic stay provided under section 362(a) of the Bankruptcy Code in respect of all actions and proceedings against Ardent and its property in the United States is appropriate pursuant to section 1520(a) of the Bankruptcy Code.  As the protections set forth in section 1520(a) are granted automatically from the recognition of a "foreign main proceeding" under section 1517, if the Court recognizes the Cayman Proceeding as a "foreign main proceeding," the Petitioner respectfully submits that no further showing is required.

**D.     Recognition of the Cayman Proceeding Is Not Manifestly Contrary to United States' Public Policy.**

79.     Recognition of a foreign proceeding is "subject to section 1506" of the Bankruptcy Code, which provides that a bankruptcy court may decline to grant relief requested if the action would be "manifestly contrary to the public policy of the United States." 11 U.S.C. §§ 1506, 1517(a). The legislative history indicates that the "public policy" exception is narrow, applying only to the "most fundamental policies of the United States." H. Rep. No. 109-31, pt. 1, 109th Cong., 1st Sess. 109 (2005). Furthermore, courts that have addressed the "public policy" exception in section 1506 of the Bankruptcy Code have noted that the exception is narrow, its application restricted to the most fundamental policies of the U.S., and a foreign judgment should generally be accorded comity if the foreign jurisdiction's proceedings meet fundamental standards of fairness. *See Collins v. Oilsands Quest Inc.*, 484 B.R. 593, 597 (Bankr. S.D.N.Y. 2012).

80.     Section 1506 has no application here. Like U.S. law, Cayman Islands law originates from (and is based on) English law. *See* Reynolds Declaration at ¶ 22. The Companies Law is a collective process that recognizes the priority of charges on property (*i.e.,* liens) and provides for *pari passu* treatment of unsecured creditors. *See* Reynolds Declaration at ¶¶ 34, 36. Cayman Islands creditors do not receive any priority simply because they are residents of the Cayman Islands. *See* Reynolds Declaration at ¶ 37. Recognizing the Cayman Proceeding as a "foreign main proceeding" would advance one of the express objectives of Chapter 15; namely, the fair and efficient administration of a cross-border insolvency that protects the interests of all creditors and other interested entities, including a debtor and the protection and maximization of a debtor's assets. *See* 11 U.S.C. § 1501(a).

**E.      Additional Relief Under Section 1521 Is Necessary and Appropriate.**

81.      "[W]here necessary to effectuate the purpose of [Chapter 15] and to protect the assets of the debtor or the interests of the creditors, the court may, at the request of the foreign representative, grant any appropriate relief. . . ." 11 U.S.C. § 1521(a).  Such relief may include, "providing for the examination of witnesses, the taking of evidence or the delivery of information concerning the debtor's assets, affairs, rights, obligations or liabilities."  11 U.S.C. § 1521(a)(4).

82.      The Petitioner's goal is to preserve and maximize the value of Ardent's assets for the benefit of its creditors and contributories.  This Chapter 15 case was filed to help the Petitioner realize that goal.   Accordingly, the Petitioner respectfully requests that he be empowered to examine witnesses and take evidence or delivery of information concerning Ardent's assets, affairs, rights, obligations or liabilities pursuant to section 1521(a)(4) of the Bankruptcy Code.

## NOTICE OF FOREIGN LAW ISSUES

83.      Pursuant to Federal Rule of Civil Procedure 44.1, as made applicable by Federal Rule of Bankruptcy Procedure 9017, Ardent hereby gives notice that it intends to raise issues of Cayman Islands' law as set forth above.  *See* Fed.R.Civ.P. 44.1 ("A party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing.   In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence.  The court's determination must be treated as a ruling on a question of law.").

## NOTICE OF INTENT TO FILE CHAPTER 11

84.    Pursuant to section 1511(a)(2) of the Bankruptcy Code, upon recognition of a foreign main proceeding, a foreign representative may commence a voluntary chapter 11 case. *See* 11 U.S.C. § 1511(a)(2).[9]

85.    Pursuant to section 1511(b) of the Bankruptcy Code, a foreign representative must advise the Court where a petition for recognition has been filed of the foreign representative's intent to file a voluntary Chapter 11 case before the foreign representative commences the Chapter 11 case.

86.    This constitutes Petitioner's notice to the Court that, upon recognition of the Cayman Proceeding as a foreign main proceeding, Petitioner intends to file a voluntary Chapter 11 bankruptcy petition for Ardent.

## NOTICE OF HEARING ON VERIFIED PETITION

87.    Pursuant to Bankruptcy Rule 2002(q)(1), notice of the hearing on the Verified Petition will be provided to (i) Ardent; (ii) the JOLs; (iii) Honorable William K. Harrington, the U.S. Trustee for the Southern District of New York; (iv) parties to litigation with Ardent in the United State   (Bruin and RMP Capital); and (v) any other parties, or by any other means, required by this Court, including publication[10] of a notice of the hearing on the Verified Petition in the *Gazette*.[11]

---

[9] The Chapter 11 petition must be accompanied by a certified copy of an order granting recognition. *See* 11 U.S.C. § 1511(b).

[10] Bankruptcy Rule 2002(l) permits the Court to "order notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement the notice." Fed. R. Bankr. P. 2002(l).

[11] Such publication notice is consistent with the manner of publication notice required by a liquidator under Cayman Island law. *See* Companies Law at § 98 ("When a winding up order is made, the liquidator shall … publish notice of the winding up in the Gazette and any newspaper in which the winding up petition was advertised"); at § 123 ("Within twenty-eight days of the commencement of a voluntary winding up, the liquidator shall … publish notice of the winding up in the Gazette."). *See* Reynolds Declaration at ¶¶ 16, 19.

88.    The Petitioner submits that no other or further notice need be provided.

## NO PRIOR REQUEST

89.    No previous request for the relief sought requested herein has been made to this or any other Court.

## SATISFACTION OF LOCAL RULE BANKRUPTCY RULE 9013-1(a)

90.    This Motion contains citations to the relevant authorities and, therefore, satisfies Rule 9013-1(a) of the Local Bankruptcy Rules for the Southern District of New York.

## CONCLUSION

WHEREFORE, the Petitioner respectfully requests that this Court enter an order, substantially in the form of the Proposed Order attached as Exhibit A, (i) recognizing the Cayman Proceeding as a "foreign main proceeding" under sections 1502(4), 1515, and 1517 of the Bankruptcy Code; (ii) recognizing the Petitioner as the "foreign representative" of Ardent as defined in section 101(24) of the Bankruptcy Code; (iii) granting the Petitioner authority— pursuant to section 1521(a) of the Bankruptcy Code—to examine witnesses, take evidence, and deliver information concerning Ardent's assets, affairs, rights, obligations, and liabilities; and (vi) granting such other and further relief as is appropriate.

Dated:  August 5, 2016
New York, New York

Respectfully submitted:

REED SMITH LLP

By:   */s/ James C. McCarroll*
     James C. McCarroll
     Kurt F. Gwynne (*pro hac vice* pending)
     Gil Feder
     Casey D. Laffey
     599 Lexington Avenue
     New York, NY  10022-7650
     Telephone:  (212) 521-5400
     Facsimile:  (212) 521-5450
     Email:  jmccarroll@reedsmith.com
     kgwynne@reedsmith.com
     gfeder@reedsmith.com
     claffey@reedsmith.com

*Counsel for the Petitioner, Michael Pearson,*
*in his capacity as Joint Official Liquidator and*
*Foreign Representative*

# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| Ardent Harmony Fund Inc., | Case No.:  16-12282 |
| Debtor. | (Jointly Administered) |

### ORDER GRANTING VERIFIED PETITION FOR RECOGNITION OF FOREIGN PROCEEDING UNDER CHAPTER 15 AND MOTION IN SUPPORT OF VERIFIED PETITION AND FOR RELATED RELIEF

Upon the *Verified Petition for Recognition of Foreign Proceeding Under Chapter 15* (the "Verified Petition") and the *Motion in Support of the Verified Petition for Recognition of Foreign Proceeding and for Related Relief* (the "Motion"),[1] filed by the Petitioner, who is the JOL and duly-authorized foreign representative for Ardent, and upon consideration of the Pearson Declaration and the Reynolds Declaration; and the Court having determined that the relief sought in the Verified Petition and the Motion is in the best interests of Ardent, its creditors, shareholders, and all parties in interest; and the Court  having considered the evidence and statements regarding the Verified Petition in the documents filed with the Court and at the hearing (if any) on the Verified Petition and the Motion (the "Hearing"); and the Court having determined that the legal, evidentiary and factual bases set forth in the documents filed with the Court establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is HEREBY FOUND AND DETERMINED THAT:

A.    The findings and conclusions set forth herein constitute the Court's findings of fact and  conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), made applicable to these proceedings pursuant to Bankruptcy Rule

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference, dated January 31, 2012, 12 Misc. 00032 (S.D.N.Y. Feb. 1, 2012) (Preska, C.J.).   The Verified Petition and the Motion constitute core proceedings pursuant to 28 U.S.C. § 157(b)(2)(P).  Venue is proper in this District pursuant to 28 U.S.C. § 1410.

C.      This case was commenced properly pursuant to sections 1504, 1509, and 1515 of the Bankruptcy Code.

D.      The Verified Petition and the Motion satisfy the requirements of section 1515 of the Bankruptcy Code.

E.      Notice of the Hearing was in compliance with Bankruptcy Rule 2002(q).

F.      The Cayman Proceeding is a "foreign proceeding" within the meaning of section 101(23) of the Bankruptcy Code.

G.      The Cayman Proceeding is entitled to recognition by this Court pursuant to sections 1515 and 1517(a) of the Bankruptcy Code.

H.      Ardent's "center of main interests" is located in the Cayman Islands and, therefore, the Cayman Proceeding is entitled to recognition as a "foreign main proceeding" pursuant to sections 1502(4) and 1517(b)(1) of the Bankruptcy Code.

I.      The Petitioner is a "person" as defined in section 101(41) of the Bankruptcy Code and a duly-appointed "foreign representative" of Ardent within the meaning of section 101(24) of the Bankruptcy Code.

J.      The relief sought in the Verified Petition and the Motion is necessary to effectuate the purpose of Chapter 15, and to protect Ardent, its assets, and the interests of its creditors and other parties in interest.

K.      The Petitioner is entitled to the additional relief set forth herein pursuant to section 1521(a)(4) of the Bankruptcy Code.

L.      Notice of the Hearing and the relief requested in the Verified Petition and the Motion was proper, adequate, sufficient and comported with due process under the circumstances, and no other or future notice is or shall be required.

**NOW, THEREFORE**, it is hereby **ORDERED THAT**:

1.      The Verified Petition and the Motion are GRANTED as set forth herein.

2.      All objections and reservations of rights, if any, relating to the Verified Petition and the Motion that have not been withdrawn, waived, or otherwise resolved are overruled and denied.

3.      The Cayman Proceeding is recognized as a "foreign main proceeding" pursuant to section 1517(b)(1) of the Bankruptcy Code.

4.      The Petitioner is recognized as a "foreign representative" (as defined in section 101(24) of the Bankruptcy Code) of Ardent.

5.      The Petitioner is entitled to conduct discovery, examine witnesses, seek and take evidence, and obtain information concerning Ardent's assets, affairs, rights,  obligations, or liabilities pursuant to section 1521(a)(4) of the Bankruptcy Code.

6.      The Petitioner is authorized to take all actions necessary to effectuate the relief granted by this Order without notice or further order of the Court.

- 3 -

7.      This Court retains jurisdiction with respect to any matters, claims, rights, or disputes arising from or related to this Order, its implementation, or otherwise arising from or related to this Chapter 15 case.

8.      This Order shall be effective and enforceable immediately upon its entry.

Dated: _____, 2016
New York, New York


_____
UNITED STATES BANKRUPTCY JUDGE